IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONNA I. BERRY                                                    PLAINTIFF

                    v.          Civil No. 05-5089

JO ANNE B. BARNHART, Commissioner,
Social Security Administration                                    DEFENDANT

# REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Donna I. Berry, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under the provisions of Title II and supplemental security income benefits (SSI) under Title XVI of the Social Security Act. The court has before it the appeal brief submitted by the Commissioner (Doc. 7) and the transcript of the social security proceedings.

**Procedural Background:**

Berry protectively filed her applications for DIB and SSI on March 8, 2002. (Tr. 17, 36-38, 82-84). She alleged a disability onset date of July 1, 1999, as a result of being deaf in the right ear, partially deaf in the left ear, having migraine headaches, depression, bronchial asthma, chronic ear infections, and psoriasis on twenty to forty percent of her body. (Tr. 17-18, 144).

Berry's applications were denied initially and on reconsideration. (Tr. 34, 41). She requested a hearing before an Administrative Law Judge (ALJ). (Tr. 58). A hearing was held

on November 6, 2003. (Tr. 376-389). Berry appeared and testified. (Tr. 379-388) She was represented by counsel. (Tr. 378).

By written decision dated March 2, 2004, the ALJ found that while Berry was obese, and had psoriasis, a history of ear infections, and a history of chronic headaches there was no medical evidence of an impairment that met or equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). The ALJ the concluded Berry had the residual functional capacity (RFC) to perform a full range of light work which included her past relevant work as a packer, floater, and cone hanger at Tyson's and a cashier. (Tr. 26). The ALJ therefore found Berry not disabled within the meaning of the Social Security Act. (Tr. 27).

On April 5, 2004, Berry requested a review on the record. (Tr. 13). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Berry's request for review. (Tr. 4-6).

**Evidence Presented:**

On September 23, 1999, Berry was seen at Doctors Regional Medical Center complaining of right ear pain and jaw pain. (Tr. 157). She was diagnosed with right otitis media and right temporomandibular joint (TMJ) dysfunction. (Tr. 158).

On October 2, 1999, Berry was seen at Doctors Regional Medical Center with an admitting diagnosis of jaw discomfort, right side of jaw. (Tr. 154). She reported being diagnosed with TMJ syndrome. (Tr. 155). She was prescribed Oruvail and was to be rechecked in two weeks. (Tr. 155).

Records from the Kneibert Clinic indicate Berry was seen there on the following dates: January 27, 1989. Welfare physical. Complaining of loss of hearing in her right ear. Cerumen

impacted bilaterally. Note made that she had persistent hearing loss in her right ear. (Tr. 216); March 18, 1989. Complaining of abdominal pain. White count normal. Ultrasound planned for the following Monday if she was still having pain. (Tr. 215); March 20, 1989. Ectopic pregnancy. (Tr. 213); March 27, 1989. Suture removal. (Tr. 213); April 20, 1989. Follow-up examination. Abdominal incision well healed. (Tr. 213); March 28, 1991. Complaining of left shoulder and right hand pain from a fall. Diagnosed with a strained scapula and trapezious musculature. (Tr. 214); April 3, 1991. Abdominal pain. Pregnancy test positive. (Tr. 212); April 4, 1991. Ultrasound to rule out tubal pregnancy. (Tr. 211); April 5, 1991. Ten week intrauterine pregnancy. (Tr. 211); April 11, 1991. Prenatal care. (Tr. 212); May 13, 1991. Prenatal care. (Tr. 211); June 12, 1991. Prenatal care. Mild bronchial irritation secondary to fume exposure. (Tr. 209-210); June 28, 1991. Bilateral excessive cerumen and early right external otitis. (Tr. 209); July 18, 1991. Prenatal care. (Tr. 208); September 9, 1991. Complaining of back pain following a fall. Full range of motion noted. Put on rest and limited activities. (Tr. 206); September 25, 1991. Bronchitis, pharyngitis. (Tr. 207); October 7, 1991. Bronchitis. (Tr. 205); October 14, 1991. Prenatal care. (Tr. 205); November 4, 1991. Staple removal. (Tr. 205); November 29, 1991. Post-partum examination. (Tr. 204); December 6, 1991. Bronchitis and pharyngitis. (Tr. 204); January 27, 1992. Sinusitis. (Tr. 203); July 17, 1992. Contusion of mandible. Traumatic TMJ. (Tr. 203); August 26, 1992. Complaining of sore throat. Diagnosed with pharyngitis and prescribed an antibiotic. (Tr. 202); December 30, 1992. Complaining of low back pain and painful intercourse. (Tr. 202); January 4, 1993. Right lower abdominal pain. Ultrasound shows enlarged right ovary and ovarian cyst. (Tr. 201); January 14, 1993. Complaining of pain in the lower abdomen. Cystic neoplasm and 5 cm.

-3-

inhomogeneous ovary. (Tr. 200); January 21, 1993. Complaining of pelvic pain. Laparoscopy advised. (Tr. 200); February 3, 1993. Preadmission for pelviscopy for severe pelvic pain. (Tr. 199); February 11, 1993. Post-operative pelviscopy and aspiration of ovarian cyst. (Tr. 199); March 4, 1993. Follow-up examination on pelviscopy and decorticiation of a thin wall ovarian cyst. (Tr. 198); March 5, 1993. Trouble breathing. Diagnosed with costochondritis.[1] (Tr. 197); March 11, 1993. Bronchitis. (Tr. 201); March 29, 1993. Pap smear. (Tr. 198); May 16, 1994. Sinusitis. (Tr. 196); June 5, 1994. Complaining of pain in her left foot and numbness of all her toes. Negative straight leg raise. X-rays unremarkable. Diagnosed with low back pain. (Tr. 195); August 17, 1994. Syncopal episode. (Tr. 194); August 24, 1994. EEG was negative. Diagnosed with a urinary tract infection. (Tr. 194); November 14, 1994. Complaining of nausea, vomiting, and diarrhea. Diagnosed with gastroenteritis. (Tr. 193); November 21, 1994. Complaining of lower abdominal pain. Diagnosed with a urinary tract infection. (Tr. 192); December 1, 1994. Red streaking on left hand. (Tr. 192); December 5, 1994. A follow-up on cellulitis of the left hand that had resolved. Also a swollen left eyelid. (Tr. 191); February 10, 1995. Complaining of a cough and congestion. Diagnosed with bronchitis and sinusitis. (Tr. 189); February 28, 1995. Complaining of an injury to her right shoulder from a fall. X-rays were normal. (Tr. 189); April 2, 1995. Complaining of lower abdominal pain. Diagnosed as suffering from mittelschmerz or pain during ovulation. (Tr. 187); April 3, 1995. Complaining of pelvic pain. (Tr. 186); December 19, 1995. Complaining of cough, congestion, laryngitis and rhonchi in the chest. (Tr. 185); February 1, 1996. Complaining of sinus congestion, headache,

---

[1]Costochondritis is an inflammation of the cartilage that connects a rib to the breastbone (sternum).

AO72A
(Rev. 8/82)

and cough. Diagnosed with sinusitis and bronchitis. (Tr. 184); February 5, 1996. Complaining of coughing, vomiting, and shortness of breath. Diagnosed with gastroentroenteritis, bronchitis, and associated bronchospasm. (Tr. 183). February 12, 1996. Complaining of shortness of breath. Note was made of the fact that Berry was trying to quit smoking. Diagnosed with bronchitis and prescribed a Serevent inhaler and Nicotrol patch. (Tr. 182); March 4, 1996. Complaining of coughing. Note was made of the fact that she continued to smoke and had stopped using the patch because of some irritation from putting it in the same spot. Diagnosed with allergic rhinitis, sinusitis, and bronchitis. Prescribed a Serevent inhaler on an as needed basis for chronic bronchitis. (Tr. 181); June 17, 1996. Gynecologic examination. Multiple vague complaints of abdominal discomfort. Noted to be a heavy cigarette smoker. Noted to have very poor dental hygiene. (Tr. 179); June 27, 1996. Complaining of cough, congestion, and sinus drainage. Diagnosed with sinusitis and bronchitis. Prescribed Serevent inhaler, Robitussin, and Entex. (Tr. 178); November 13, 1996. Complaining of right ear pain. Diagnosed with external otitis, bilateral but right worse than left. (Tr. 178); March 27, 1997. Complaining of a low grade fever and pain in her right jaw. Diagnosed as having a tooth abscess. Note was made that Berry was having symptoms of depression, fatigue, weight gain, generalized weakness at times. (Tr. 176); April 2, 1997. Ultrasound of the thyroid shows a 3.0 cm. cyst at the lower left. (Tr. 173-174); April 10, 1997. Aspiration of thyroid cyst. (Tr. 172). April 14, 1997. No evidence of malignancy. Some evidence that the nodule will refill. If it does, resection will be required. (Tr. 172); April 28, 1997. Thyroid nodule recurred and plan to remove it partially next week. (Tr. 171); May 17, 1997. Lesion was a thyroid adenoma with cystic degeneration. Healing well. Some residual immature scar tissue that is slightly tender.

AO72A
(Rev. 8/82)

(Tr. 171); February 19, 1998. Sinusitis. (Tr. 169); February 2, 1999. Berry was examined for the Division of Family Services. Note was made that Berry had a thyroid cyst surgically removed a year ago. She complained of being sluggish and becoming easily tired since then. There was no evidence of a substantial thyroidectomy and no evidence of a malignancy. She thought she found a lump in her breast the day before the exam but there was no history of breast cancer. Berry also complained of pain during intercourse and decreased hearing in her right ear since childhood. Dr. Elliott noted that he "really did not find anything today that suggests to me that [Berry] is substantially disabled." Note was made that Berry had substantial psoriasis. (Tr. 166-167); May 12, 1999. Earache, cough, and congestion. Diagnosed with Otitis media (left) and bronchitis (Tr. 167); May 24, 1999. Ear infection and bronchitis. (Tr. 166); Berry complained of a large weight gain, fifty pounds, since having thyroid surgery a year ago, occasional difficulty swallowing, some pelvic pain, fatigue, she denied any significant stress, anxiety, or depression, she reported sleeping well. A history of thyroid adenoma was noted as well as dysphagia, abdominal pain, and vision changes. Berry did a Beck Depression Inventory which was negative. (Tr. 165-166); November 8, 1999. She complained of an irregular menstrual schedule and although her tubes had been tied believed she might be pregnant and having a miscarriage. No evidence of an infection, pregnancy, or miscarriage was found. (Tr. 161-162).

On the following dates, Berry was seen at the Carroll Regional Medical Center: February 3, 2002, complaining of pain at the base of the index finger of her left hand. Diagnosed with a possible brown recluse spider bite (Tr. 234); February 24, 2000, complaining of a headache and nausea. (Tr. 230). She was diagnosed with a headache and a reactive airway. (Tr. 233). She

AO72A
(Rev. 8/82)

was given an injection and discharged. (Tr. 233); April 6, 2000, complaining of having passed out twice. (Tr. 226). A chest x-ray was normal. (Tr. 229). She was diagnosed with resolving pharyngitis, bronchitis, headache, and tobacco abuse. (Tr. 227); April 17, 2000, complaining of a migraine headache. (Tr. 225). She was diagnosed with a muscle contraction headache and given an injection. (Tr. 232); April 23, 2000, complaining of a migraine headache. (Tr. 223). She was given an injection and diagnosed with a headache. (Tr. 224); May 23, 2000, complaining of a migraine headache. (Tr. 221). She was given an injection and diagnosed with a headache of unknown etiology. (Tr. 222); May 30, 2000, complaining of nausea and a migraine. (Tr. 219). She was given an injection and discharged. (Tr. 220); June 23, 2000, Berry had a non-contrast CT of her head performed because of complaints of headaches. The CT was negative but there was a fluid level noted in the right maxillary sinus compatible with acute sinusitis. (Tr. 218).

Berry was seen at the Berryville Family Health Clinic on various dates in 2000. She was seen by Dr. Moon a neurologist on June 28, 2000, who felt some of her headache was migraine but a lot of it was infection. (Tr. 240). She was treated by Dr. Craig Milam from March 6, 2000, through July 17, 2000, for recurring ear infections, ear aches and some headaches. (Tr. 237-259). He noted a sinus CT had shown changes of acute/chronic right maxillary sinusitis with some blockage. (Tr. 237). On March 6, 2000, Dr. Milam prescribed Prozac for probable depression. (Tr. 259). On May 5, 2000, Dr. Milam saw Berry who was complaining of a migraine headache. (Tr. 359). Berry gave Dr. Milam a form to fill out so she could leave work when she got a headache. (Tr. 359). Dr. Milam did not fill out the form because he felt it was inappropriate.

(Tr. 359). On July 17, 2000, Dr. Milam provided Berry with four boxes of 10 mg. samples and four boxes of 20 mg. samples of Prozac. (Tr. 237). Berry was to take 30 mg. a day. (Tr. 237).

On April 26, 2001, Berry was seen by Dr. Roger L. Troxel. (Tr. 277). She was complaining of a migraine headache and some abdominal pain. (Tr. 277). The abdominal pain appeared to be musculoskeletal. (Tr. 277). She was given Maxalt for her headache, an injection for the headache, samples of Vioxx, and samples of Prozac. (Tr. 277).

On April 29, 2001, Berry was seen at the Randolph County Medical Center complaining of lower abdominal pain. (Tr. 264-266). She reported having been seen by Dr. Troxel a few days before and being diagnosed with inflamed ovaries and tubes. (Tr. 266). Note was made of the fact that she had taken herself off Prozac. (Tr. 266). She was diagnosed with pelvic pain of unknown etiology. (Tr. 268).

On June 25, 2001, Berry was seen by Dr. Troxel. (Tr. 276). She was complaining of a typical migraine headache. (Tr. 276).

On March 26, 2002, Berry completed a questionnaire in connection with her application for disability benefits with the Missouri Department of Elementary and Secondary Education, Division of Vocational Rehabilitation. (Tr. 100-104). Berry indicated she was in a lot of pain and after she was over it she was very weak. (Tr. 100). She stated she was deaf in her right ear and her ears gave her problems all the time. (Tr. 100). She stated she had migraines at least three to four times a week. (Tr. 100). She indicated changes in the weather make her bronchial asthma act up as did being around cleaning chemicals, hair spray, cologne, or nearly anything that "smells." (Tr. 100). She stated she had sinus infections frequently. (Tr. 100).

AO72A
(Rev. 8/82)

She indicated she was on Maxalt, Darocet, Prozac, and a Serevent inhaler. (Tr. 100). She stated she could not drive or work when on the medications because they made her dizzy and sleepy. (Tr. 100). She stated she could not clean the house using any type of chemicals because of her asthma and migraines. (Tr. 101). When she was feeling good and not in pain and her asthma was not bothering her, she stated she could tolerate doing most of the cleaning and household chores herself. (Tr. 101). She indicated there were times she was in so much pain she could not dress herself. (Tr. 101).

On a supplemental questionnaire, Berry indicated it bothered her to stand very long or to walk when she is in pain. (Tr. 104). She stated lifting, bending, kneeling, squatting, reaching forward or backwards, and working or reaching overhead hurt. (Tr. 104). At times, she stated she could tolerate using her hands. (Tr. 104). She stated climbing stairs made her short of breath. (Tr. 104). She stated she had pain in her head, ears, and lungs. (Tr. 104). She described the pain as throbbing, aching, and sharp. (Tr. 104).

On April 10, 2002, Berry underwent a consultative examination by Dr. D.K. Varma at the request of the Missouri Department of Elementary and Secondary Education, Section of Disability Determination. (Tr. 279-282). Berry reported chronic headaches with an average frequency of six to eight a month, deafness in the right ear and diminished hearing in the left ear, depression accompanied by nervousness and frequent crying spells, and psoriasis treated with over-the-counter Hydrocortisone ointment. (Tr. 279). Note was made that Berry also reported a history of chronic asthma. (Tr. 280).

Dr. Varma listed his diagnostic impressions as: chronic headache; anxiety state; depression; sino-rhinitis; and psoriasis. (Tr. 281). He also commented that Berry was able to

AO72A
(Rev. 8/82)

hear and understand normal conversation and speech. (Tr. 281). He stated that there were no clinical findings suggestive of asthma. (Tr. 281). He stated that was "no clinical evidence of dyspnea at rest or any restriction due to any activity." (Tr. 281).

After the consultative examination, Berry began seeing Dr. Varma. (Tr. 285-297). Records indicate she saw him on various dates beginning on April 2002 through May of 2003. (Tr. 285-297). In June of 2002, Dr. Varma prescribed Paxil for Berry. (Tr. 296).

On April 22, 2002, a psychiatric review technique form was completed by Dr. James Spence. (Tr. 112-125). Berry was determined to have a non-severe affective disorder. (Tr. 112 & 124). It was noted Berry had a previous diagnosis of depression by her treating physician and had been prescribed Prozac. (Tr. 115). Note was made Berry had not seen the treating physician in almost a year and had denied any counseling and cited crying as her only symptom. (Tr. 124). Berry reported when she was not in pain she could grocery shop, do most household chores, visit family, and pay bills. (Tr. 124). No functional limitations were noted to exist. (Tr. 122).

On July 17, 2002, Berry underwent a psychiatric evaluation performed by Dr. Ravdeep S. Khanuja of the Kneibert Clinic. (Tr. 314-316). Berry reported getting stressed out and having frequent, almost daily, crying spells. (Tr. 314). She reported being physically and verbally abused by her first husband and also a history of her Mother being physically abused by her Father. (Tr. 314-315).

Berry reported having taken Paxil for the past two or three months with poor response. (Tr. 314-415). Prior to that, Berry stated she had been on Prozac which made her sleepy and tired. (Tr. 315). Berry denied ever having any type of psychiatric treatment. (Tr. 315).

AO72A
(Rev. 8/82)

Dr. Khanuja diagnoses were: Axis I: (1) major depressive disorder, recurrent, moderate severity; (2) rule out adjustment disorder of depressed symptoms; (3) post traumatic stress disorder; Axis II: Deferred; Axis III: Psoriasis, migraines, asthma and hearing problems; Axis IV: Moderate to severe psychological stressors related to recent losses in terms of her Father and Grandmother passing away, financial problems, stresses related to numerous medical problems; Axis V: At the time of the evaluation is 40 to 45. (Tr. 315-316).

Dr. Khanuja indicated Berry met the criteria for major depressive disorder versus post traumatic stress disorder. (Tr. 316). He continued her on Paxil and augmented with Paxil with Effexor. (Tr. 316). He also referred her to psychotherapy. (Tr. 316). Dr. Khanuja opined that Berry was currently "unable to work due to the severity of her symptoms." (Tr. 316).

Records indicate Berry was treated for anxiety and depression at the Mental Health Department of the Kneibert Clinic from September 26, 2002 through April 14, 2004. (Tr. 319-340).

On August 15, 2002, Berry was approved for medical assistance and general relief by the Missouri Department of Social Services. (Tr. 88).

On July 10, 2003, Dr. Donald S. Piland conducted a consultative examination on Berry for the Missouri Department of Elementary and Secondary Education, Section of Disability Determinations. (Tr. 298). On physical examination, Dr. Piland noted multiple scattered areas of psoriasis both in the scalp and on the legs. (Tr. 301). Berry could hear conventional speech. (Tr. 301). Range of motion of her extremities were within normal limits as was the range of motion in her spine. (Tr. 305-306). There was no cyanosis, clubbing or edema detected. (Tr. 301). There were diminished 2+/4+ pulsations bilaterally. (Tr. 301). Berry was able to squat

AO72A
(Rev. 8/82)

with moderate difficulty but required the use of the examining table to get up. (Tr. 301). She could heel and toe walk with moderate difficulty. (Tr. 301). Her motor and sensory exams were normal. (Tr. 301). Cranial nerves were intact and deep tendon reflexes normal. (Tr. 301).

Dr. Piland listed his diagnostic impressions as follows: depression; peripheral vascular disease, mild to moderate; gastroesophageal reflux disease; chronic asthma, currently very stable; psoriasis; reported hearing loss in the right ear. The patient is able to understand conversational speech with minimal difficulty. (Tr. 301).

Dr. Piland also completed a medical source statement of ability to do work-related activities. He indicated Berry could occasionally lift and/or carry ten pounds; could frequently lift and/or carry ten pounds; could stand and/or walk at least two hours in an eight hour day; and her ability to sit and push and/or pull were not affected by her impairment. (Tr. 302-303).

He stated she could only occasionally climb, balance, kneel, crouch, or crawl. (Tr. 303). In this regard, he noted her weight would be an issue in doing these activities. (Tr. 303).

He indicated her hearing was slighted affected. (Tr. 304). With respect to environmental limitations, he noted she was limited with respect to temperature extremes, exposure to dust, exposure to humidity/wetness, exposure to hazards such as machinery or heights, and exposure to fumes, odors, or chemicals. (Tr. 304). He indicated these limitations were due to her asthma and also because her size would be a problem. (Tr. 304).

On July 10, 2003, Dr. Steve Larson, a licensed clinical psychologist, evaluated Berry. (Tr. 307-311). Berry reported auditory hallucinations that she only hear in one ear. (Tr. 308). Dr. Larson found it difficult to believe her report. (Tr. 308). Berry also reported sometimes

AO 72A
(Rev. 8/82)

seeing things that were not there. (Tr. 308). Again, Dr. Larson found it difficult to believe this claim. (Tr. 308).

Intelligence testing resulted in a verbal IQ score of 71, a performance IQ of 73, and full scale IQ of 69. During intelligence testing, it was noted that Berry did not appear to put forth consistent effort. (Tr. 308). Because of this, Dr. Larson believed the results were an underestimate of her current intellectual functioning. (Tr. 308). Dr. Larson estimated Berry's actual IQ to be somewhere between 75 and 85. (Tr. 308).

On the Wechsler Memory Scale–Third Edition, Berry's results fell in the average to low average range. (Tr. 310). Note was made that individuals who had this type of memory skills typically did not have problems with remembering instructions on the job. (Tr. 310). There was no suggestion of any serious neurological problems. (Tr. 310).

On the MMPI, Berry's validity profile indicated she answered the questions in a manner designed to exaggerate her psychiatric problems. (Tr. 310). Because of this, the results were not considered to be valid. (Tr. 310). Note was made of the fact that Berry reported numerous and very severe psychiatric problems in the test that were not consistent with her behavior during the examination or the problems she reported during the clinical interview. (Tr. 310). Dr. Larson noted that Berry's test results indicated she tended to complain of quite a few physical problems and that she was likely to use her complaints in a way to get attention and sympathy from others. (Tr. 310).

Dr. Larson also completed a medical source statement of ability to do work-related activities. (Tr. 312-313). He indicated Berry had no problem understanding instruction during the examination except when reading instructions. (Tr. 312). He noted she had slight limitations

-13-

AO72A
(Rev. 8/82)

in her ability to carry out detailed instructions, in her ability to make judgments on simple work-related decisions, and in her ability to understand and remember detailed instructions. (Tr. 312). He also noted she would have slight restrictions in her ability to interact appropriately with the public, her supervisor, and co-workers, in her ability to respond appropriately to work pressures in a usual work setting, and in her ability to respond appropriately to changes in a routine work setting. (Tr. 313). He noted this assessment was supported by her mild anxiety. (Tr. 313).

At the hearing held on November 6, 2003, Berry testified she was thirty-three years old and had a tenth grade education. (Tr. 379). She attended special education classes because she needed additional help with math and English. (Tr. 379-380).

Berry indicated she was 5'4" to 5'5" tall and weighed about 230 pounds. (Tr. 380). She stated her normal weight was around 130. (Tr. 380). Berry stated she had been gaining weight on a regular basis for about a year and a half to two years. (Tr. 380).

Berry stated she was totally deaf in her right ear since childhood and had bad eyes. (Tr. 380). She stated her arms and hands go numb and she has poor blood circulation throughout her body. (Tr. 387). She indicated her feet swell and go numb. (Tr. 387-388).

She also indicated she had migraines and deteriorating disks in her lower back. (Tr. 380 & 387). With respect to her migraines, she indicated she sometimes gets them two or three times a week and they can last two or three days. (Tr. 381). When the migraines are bad, Berry testified she had to get shots for them. (Tr. 381). She indicated she got shots four or five times a month depending on how serious the migraines were. (Tr. 381).

AO72A
(Rev. 8/82)

Berry testified she has psoriasis all over her body and her hair. (Tr. 381). She also indicated she has asthma. (Tr. 381). She stated she takes Theophylline three times a day for the asthma and also Serevent. (Tr. 382).

Berry indicated she has blackout spells. (Tr. 382). In the month before the hearing, she indicated she had three such spells. (Tr. 382).

Berry testified she has bad nerves and depression. (Tr. 382). She indicated she was seeing Dr. Debbie Price once a month for depression for about two years. (Tr. 382). She stated she had crying spells two or three times a week. (Tr. 384). She stated she sometimes hears voices and once saw blood in the water. (Tr. 385).

Berry testified she drives on occasion but normally has her mother-in-law or sister-in-law go with her. (Tr. 385). They sometimes drive. (Tr. 385). She can't read a road map. (Tr. 386).

Berry testified if she is shopping and needs to figure out how much change she should get back she would have to sit down and it would take her a few minutes to figure it out. (Tr. 385). She can read a newspaper but has some difficulty comprehending it. (Tr. 385). She stated she sometimes has to read it three or four times. (Tr. 385). Most of the time, Berry testified she can't remember what she reads. (Tr. 386).

Berry indicated she has high blood pressure, high cholesterol, a liver disorder, problems with acid reflux, stomach problems, and bowel problems. (Tr. 383). Berry testified she can no longer lift. (Tr. 386). She can't bend over a lot or she gets dizzy and light-headed. (Tr. 386). She can't stand or sit for a long period of time because of her back and shoulders. (Tr. 386-387).

AO72A
(Rev. 8/82)

Berry is able to take care of her daily hygiene needs and normally can dress herself although there are times her husband has to help her. (Tr. 387).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**:

In this case, we believe remand is necessary. As noted above, this court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). The court's review includes new evidence considered by the Appeals Council "that relates to the period before the date of the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)(*citing* 20 C.F.R. § 404.970(b)). *See also Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995)(noting that the Eighth Circuit, unlike some other circuits, does consider "tardy evidence" in the "substantial evidence equation."). "[W]e do not evaluate the Appeals Council's decision to deny review, but

rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination." *Cunningham*, 222 F.3d at 500.

We believe substantial evidence does not support the evaluation of Berry's mental impairment. As the Eighth Circuit has noted, "[t]he evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment." *Vester v. Barnhart*, 416 F.3d 886, 892-893 (8th Cir. 2005). The ALJ found Berry's depression to be non-severe. (Tr. 21). However, in doing so, he stated that he gave no weight to the findings of Dr. Khanuja. (Tr. 21). The ALJ also relied heavily on Berry's failure to seek psychiatric or psychological services despite Dr. Khanuja's recommendation as well as the fact that her treating physician's records contained only infrequent mention of any symptoms of depression. (Tr. 210).

While the office records indicating Berry was undergoing monthly counseling for depression and anxiety were not submitted until shortly after the ALJ's decision was rendered, we note that Berry testified at the hearing before the ALJ she had been seeing Dr. Price once a month for about two years for depression. (Tr. 382). Treatment records submitted to the Appeals Council also indicate Berry did in fact follow through on Dr. Khanuja's recommendation and underwent treatment for anxiety and depression from September of 2002 through April 14, 2004. (Tr. 7 & 319-340).

Furthermore, the records appear to indicate Berry was on medication for depression from March of 2000 on. (Tr. 259, 237, 277, 100, 296, 319-340). While there is some question whether Berry took the medication consistently during this period of time or only sporadically, this is an issue on which the record should be fully developed on remand.

While there may still be valid reasons for discounting Dr. Khanuja's assessment of Berry, we believe the records indicating Berry in fact followed through with Dr. Khanuja's recommendation should be considered. We therefore believe it is necessary to obtain further information on the impact of Berry's depression and anxiety on her ability to do work-related activities.

**Conclusion**:

For the reasons stated, I recommend that the decision of the Commissioner be reversed this case remanded for further proceedings. **The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 30th day of May 2006.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)